1

**KAUFMAN DOLOWICH, LLP**
Aimee G. Hamoy (SBN 221228)

2
180 Grand Avenue, Ste. 995
Oakland, CA 94612

3
Telephone: (510) 630-7646
Facsimile: (415) 926-7601

4
Email: ahamoy@kaufmandolowich.com

5
Attorney for Defendant
SAFEGRAPH

6

7                    IN THE UNITED STATES DISTRICT COURT

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   CALVARY CHAPEL SAN JOSE, a          Case No.: 3:23-cv-04277-VC
     California nonprofit corporation; PASTOR

11   MIKE MCCLURE, an individual;        **DEFENDANT SAFEGRAPH'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES 12(b)(1) AND (6)**

12              Plaintiffs,

13         v.                            Hearing Date: February 15, 2024
                                         Time: 10:00 AM
14   SANTA CLARA COUNTY, et al,          Judge: Hon. Vince Chhabria
                                         Courtroom: Courtroom 4-17th Floor
15              Defendants.

16

17

18                    <u>**NOTICE OF MOTION AND MOTION**</u>

19         NOTICE IS HEREBY GIVEN that on Thursday, February 15, 2023, at 10:00 AM, or as soon

20   thereafter as the matter may be heard in the above-entitled court, located at the San Francisco Courthouse,

21   450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 4 – 17th floor, of Judge Vince Chhabria,

22   Aimee Hamoy, for and on behalf of Defendant SafeGraph, will and hereby does move the Court to dismiss

23   this action under several bases, including Federal Rules of Civil Procedure 12(b)(1) and (6).

24         SafeGraph's motion is based on this Notice of Motion, Motion, the following Memorandum of

25   Points and Authorities, the concurrently filed Request for Judicial Notice, the pleadings and other papers on

26   file in this action; and on such oral argument as the Court may permit.

27

28

**Table of Contents**

I.    INTRODUCTION .......................................................................................................... 7

II.   BACKGROUND ............................................................................................................ 7

   A.   SafeGraph's Data Provides Public Information About Places ................................. 7

   B.   Safegraph's Support For Public Health During The Pandemic ............................... 8

   C.   Background Of Plaintiffs' Previous Disputes With SCC ........................................ 8

   D.   The FAC's Factual Allegations .............................................................................. 9

III.  LEGAL STANDARD..................................................................................................... 9

   A.   Federal Rule Of Civil Procedure 12(b)(1) ............................................................ 9

   B.   Federal Rule Of Civil Procedure 12(b)(6) ............................................................ 9

IV.   ARGUMENT ............................................................................................................... 10

   A.   The FAC As To SafeGraph Must Be Dismissed Because It Does Not Present A Case Or Controversy ............................................................................................................ 10

     1.   Plaintiffs Fail To Allege Any Actual Fourth Amendment Injury............................ 10

       a.   CCSJ Lacks Direct Standing For Its Fourth Amendment Claim ……................... 9

       b.   The FAC Fails To Establish Any Cognizable Fourth Amendment Injury……………. 10

       c.   CCSJ Lacks Associational Standing…………………………………………… 11

     2.   The FAC Fails To Allege Any Injury That Is Traceable To SafeGraph .................. 12

       a.   Plaintiffs' Fourth Amendment Claim Is Not Traceable To SafeGraph…...……………. 11

       b.   Plaintiffs' First Amendment Claims Are Not Traceable To SafeGraph…………………. 12

     3.   Plaintiffs' Claims Are Not Redressable By The Requested Relief............................ 14

   B.   Plaintiffs' Claims Are Time-Barred........................................................................ 15

   C.   The FAC Fails To Allege Facts Sufficient To State A Plausible Section 1983 Claim Against SafeGraph ................................................................................................................ 15

     1.   The FAC Fails Against SafeGraph For Lack Of State Action................................. 15

       a.   The FAC Fails The State-Policy Requirement…………………..…………………… 14

       b.   SafeGraph's Private Data Business Is Not Fairly Attributable To The State……….……. 16

         i.   The FAC Does Not Satisfy The Nexus Test…………………….………………… 16

ii.      The FAC Does Not Satisfy The Joint Action Test…………….…………….. 17

2.   The FAC Still Fails To Allege Facts Necessary To State A Plausible Section 1983 Claim ....... 19

a.      No Reasonable Expectation Of Privacy Interest In Anonymized, Opted-In Data Exists… 19

b.      Plaintiffs' Religious Activity Was Not A Motivating Factor In SafeGraph's Data

Business…………………………………………………………………………….... 20

V.   CONCLUSION...................................................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT SAFEGRAPH'S NOTICE OF MOTION
AND MOTION TO DISMISS UNDER FRCP 12(B)(1) AND (6)

Case No.: 3:23-cv-04277-VC

1

**Table of Authorities**

2  *Alderman v. U.S.*, 394 U.S. 165, 174 (1969) .................................................................... 11

3  *Am. Baptist Churches in the U.S.A v. Meese*, 66 F.Supp. 1358, 1363-64 (N.D. Cal. Mar. 30, 1987)......... 12

4  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................... 9

5  *Az. Students' Ass'n v. Az. Bd. of Reg.*, 824 F.3d 858, 867 (9th Cir. 2016)....................................21

6  *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 397–99 (4th Cir. 2001) ..................................... 14

7  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .......................................................... 9

8  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) .................................................................. 15

9  *Bond v. U.S.*, 529 U.S. 334, 338 (2000) ........................................................................ 20

10  *Cal. v. Ciraolo*, 476 U.S. 207, 211 (1986)...................................................................... 20

11  *Calvary Chapel San Jose v. Cody,* 5:20-cv-03794 (N.D. Cal.) .................................................. 8

12  *Carlin Commc'n., Inc.v. Mount. States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir.1987)................... 17

13  *Carpenter v. U.S.*, 138 S. Ct. 2206, 2213 (2018)................................................................ 11

14  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) ........................ 9

15  *FTC v. Kochava Inc.*, -- F. Supp. 3d. --, 2023WL3249808, at *9 (D. Id. May 4, 2023) ........................ 20

16  *Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 776 ................................................ 19, 20

17  *Empress LLC v. City and Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)................................ 14

18  *Fellow. of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 682 (9th Cir. 2023)................ 10

19  *Fleck & Assocs., Inc. v. Phoenix Cty. of an Ariz. Mun. Corp.*, 471 F.3d 1100, 1105 (9th Cir. 2006)......... 11

20  *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) ............................................................ 18

21  *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) .......................................................... 19

22  *Hammerling v. Google LLC*, 615 F. Supp. 3d. 1069, 1088-90 (N.D. Cal. July 18, 2022) ........................ 12

23  *Horne v. Flores*, 557 U.S. 433, 445 (2009) .................................................................... 10

24  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)........................................ 12

25  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ......................................... 9-10

26  *Katz v. U.S.*, 389 U.S. 347, 361 (1967)........................................................................ 20

27  *Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir.1993)................................... 14

28

1    *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982)................................................................... 15

2    *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)............................................................. 10

3    *Mathis v. Pac. Gas and Elec. Co.*, 75 F.3d 498 (9th Cir. 1996) ........................................... 19

4    *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986)....................................... 9

5    *Mills v. City of Covina,* 921 F.3d 1161, 1166 (9th Cir. 2019) ............................................... 14

6    *Nance v. Ward*, 142 S. Ct. 2214, 2225 (2022) ....................................................................... 14

7    *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023) .................................................... 15

8    *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) .............................................................. 16

9    *Pasadena Repub. Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021)........................... 15

10   *Patel v. Cty. of Montclair*, 798 F.3d 895, 897 n.1 (9th Cir. 2015)......................................... 11

11   *Prager Univ. v. Google LLC*, 951 F.3d 991, 995–99 (9th Cir. 2020)...................................... 15

12   *Rawson v. Rec. Innov., Inc.*, 975 F.3d 742, 753 (9th Cir. 2020) ............................................ 18

13   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)....................................... 9

14   *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)............................................... 12

15   *Smith v. Maryland*, 442 U.S. 735, 740 (1979) ....................................................................... 20

16   *Sosa v. DirectTV, Inc.*, 437 F.3d 923, 935-37 (9th Cir. 2006)........................................ 14, 15

17   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ............................................................... 10

18   *Theme Promo., Inc. v. News. Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008)............................... 14

19   *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) .......................................... 17

20   *U.S. v. Wahchumwah*, 710 F.3d 862, 867 (9th Cir. 2013) ...................................................... 20

21   *United Union of Roofers, Waterproof., & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400
(9th Cir. 1990)............................................................................................................. 12

22   *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1036 (6th Cir. 2022)................. 12

23   *Villegas v. Gilroy Garlic Fest. Ass'n.*, 541 F.3d 950, 955 (9th Cir. 2008).................................. 17

24   *Williams v. Facebook, Inc.*, 384 F.Supp.3d 1043, 1055 (N.D. Cal. Dec. 18, 2018)...................... 16

25   *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112 (9th Cir. 2022)......................... 15, 16

26

27

28

        

1

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 6, 14, 15, 19, 21

Cal. Civ. Proc. Code § 335.1 ................................................................................... 15

Fed. R. Civ. P. §12(b)(1)………………………………………………………… 9

Fed. R. Civ. P. §12(b)(6)………………………………………………………… 9

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SAFEGRAPH'S NOTICE OF MOTION
AND MOTION TO DISMISS UNDER FRCP 12(B)(1) AND (6)

Case No.: 3:23-cv-04277-VC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Finding themselves on the losing end of two prior lawsuits involving Santa Clara County's ("SCC") response to COVID-19, Plaintiffs are back for their third bite at the proverbial apple. For the first time, more than three years after the alleged acts occurred, Plaintiffs seek to drag SafeGraph into their feud with SCC in a naked attempt to resuscitate their failed claims. The first amended complaint ("FAC"), ECF 27, is the product of ill-founded speculation stemming from Plaintiffs' tortured interpretation of an expert report produced in Plaintiffs' prior federal lawsuit against SCC. It must be dismissed.

Plaintiffs' claims against SafeGraph must be dismissed with prejudice for two reasons. First, this Court lacks jurisdiction because, allowing for the fact that the merits and standing often overlap in privacy cases, Plaintiffs do not have standing to bring their claims against SafeGraph. Second, Plaintiffs' claims are time-barred under California's two-year statute of limitations for 42 U.S.C. § 1983 claims. Additionally, Plaintiffs' speculative and contradictory allegations fail to show state action by SafeGraph or the facts necessary to state a plausible Fourth or First Amendment claim. Each ground independently requires dismissal of the FAC against SafeGraph.

## II.   <u>BACKGROUND</u>

### A.   <u>SAFEGRAPH'S DATA PROVIDES PUBLIC INFORMATION ABOUT PLACES</u>

SafeGraph is a small, privately-owned business that compiles and curates public information about points of interest ("POI"), like restaurants, parks, retail stores, and other businesses. As relevant to the FAC, SafeGraph's products comprised three different, but related, datasets: Places, Geometry, and Patterns. SafeGraph's Places provides a set of geospatial attributes about the physical locus of a POI, like the address string, geographic coordinates, brand affiliation, and industry classification of the business operating at a POI. SafeGraph's Geometry provides geospatial information about the size and shape of building footprints for the POI in its Places dataset, represented by polygons, for understanding relationships between POI (e.g., individual stores within a shopping mall or property boundaries).

While no longer a product offering, Patterns was a differentially-private dataset that was the product of a statistical model of demographic movements aggregated to POI. Patterns reported cumulative,

approximated visit statistics for each POI in SafeGraph's Places in isolation, rather than aggregating the places visited to a mobile device, so that it revealed nothing about the continuous movements of individuals. In other words, Patterns simply showed the comparative popularity of a SafeGraph POI as an attribute of that location, much like the operating hours or brand of a business are POI attributes that SafeGraph reports through its other products.

**B.**    **SAFEGRAPH'S SUPPORT FOR PUBLIC HEALTH DURING THE PANDEMIC**

SafeGraph believes democratizing access to data is essential to furthering the public interest through research and innovation. So, to its commercial disadvantage, SafeGraph made its data available for free under non-commercial license agreements to hundreds of academic institutions, including Stanford, UC Berkeley, MIT, Harvard, Yale, Columbia, and the University of Chicago, solely for publication and educational purposes. At the onset of the pandemic, SafeGraph's *gratis* data program helped research institutions assist the public response to the COVID-19 crisis.

**C.**    **BACKGROUND OF PLAINTIFFS' PREVIOUS DISPUTES WITH SCC**

The years-long dispute between Plaintiffs and SCC is well established in the record of this Court, *see Calvary Chapel San Jose v. Cody,* 5:20-cv-03794 (N.D. Cal.) ("2020 Suit"), and of the California Superior Court, *The People of the State of Cal., Cnty. of Santa Clara v. Calvary Chapel San Jose et al.*, No. 20CV372285 (Santa Clara Cty. Super. Ct.) ("State Nuisance Action"). *See* SafeGraph Request for Judicial Notice ("RJN"), Exs. 2-4. The expert witness report of Stanford Professor Daniel Ho ("Ho Report"), produced in discovery during the 2020 Suit, underlies the entirety of the FAC's allegations. RJN, Ex. 1.

The Ho Report establishes six key points. First, the statistical Patterns data was derived only from consumer-permissioned, or "opted-in", location information. *Id.* at 4. Second, the panel of devices in SCC from which opted-in data was sourced represented only 3% of the population of SCC. *Id.* Third, Patterns provided visit statistics for 25,765 different POI in SCC. *Id.* Fourth, Patterns did "not provide information about individual users to protect privacy." *Id.* Fifth, the functional limitations inherent to SafeGraph's privacy protections meant that Patterns could be used only "to detect broad patterns in movement and visits," not precise movements of discrete individuals. *Id.* And sixth, the Ho Report retroactively analyzed only on

historical Patterns data originally produced and made commercially available during the period of January 1, 2020 through February 28, 2021. *Id.*

## D.   THE FAC'S FACTUAL ALLEGATIONS

The FAC is tellingly threadbare as to SafeGraph. Most of the factual allegations are irrelevant to SafeGraph and its data, and consist of generalized discussions of geofences and articles on re-identifying data with no connection to SafeGraph, (FAC ¶¶ 41-53; *see* FAC Exhibits A and B), or are directed to third-party application companies and Google, (FAC ¶¶ 55-85). Each of the four claims for damages hinges on the allegation that SCC's acquisition and use of location data in the State Nuisance Action violated Plaintiffs' constitutional rights. *See* FAC ¶¶ 97, 102, 108, 114, 118, 123-125.

## III.   LEGAL STANDARD

## A.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(l). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010); s*ee also* Fed. R. Civ. P. 12(h)(3). A jurisdictional challenge to a complaint may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual challenge to subject matter jurisdiction, the Court "need not presume the truthfulness of the plaintiffs allegations" and may consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Id.*

## B.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court's review under Rule 12(b)(6) is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986). While a court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff, it need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

1    *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

2 IV.    <strong><u>ARGUMENT</u></strong>

3    **A.**    <u>**THE FAC AS TO SAFEGRAPH MUST BE DISMISSED BECAUSE IT DOES NOT**</u>
4    <u>**PRESENT A CASE OR CONTROVERSY**</u>

5        Article III standing is a jurisdictional issue that must be addressed as a threshold matter. *See Horne*

6 *v. Flores*, 557 U.S. 433, 445 (2009). Plaintiffs have the burden of establishing Article III standing. *Lujan v.*

7 *Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To do so, a plaintiff must demonstrate that he "(1) suffered an

8 injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

9 be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[A]t the

10 pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (internal quotation

11 and alterations omitted). Because Plaintiffs do not adequately allege any Fourth Amendment injury in fact

12 and cannot establish any injury that is traceable to SafeGraph or redressable by the requested relief, they

13 lack standing against SafeGraph. This Court must dismiss the FAC with prejudice as to SafeGraph for want

14 of a case or controversy.

15 **1.**    <u>**Plaintiffs Fail To Allege Any Actual Fourth Amendment Injury**</u>

16        A plaintiff may establish an injury in fact only if it shows that it suffered "an invasion of a legally

17 protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

18 hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). "A 'concrete' injury must be 'de

19 facto'; that is, it must actually exist." *Spokeo, Inc.*, 578 U.S. at 340. "For an injury to be particularized, it

20 must affect the plaintiff in a personal and individual way." *Id.* at 339 (internal quotation omitted). Plaintiffs'

21 Fourth Amendment claim alleges they were harmed by the collection and use of location data in the State

22 Nuisance Action. FAC ¶¶ 92-98. This injury, as alleged, is neither concrete nor particularized.

23 **a.**    <u>**CCSJ Lacks Direct Standing for its Fourth Amendment Claim**</u>

24        Plaintiffs' Fourth Amendment claim is predicated on an alleged invasion of privacy through the

25 collection of individual's location data from commercial applications and web platforms. FAC ¶¶ 55-85.

26 Organizations have direct standing if the challenged conduct frustrated the organization's mission and that

27 frustration of purpose caused the organization to divert its resources. *Fellow. of Christian Athletes v. San*

28

10

*Jose Unified Sch. Dist.*, 82 F.4th 664, 682 (9th Cir. 2023) (en banc). The FAC does not allege how SafeGraph's receipt of data from commercial vendors, as opposed to SCC's alleged use of data in its enforcement actions, frustrated CCSJ's religious mission or that CCSJ diverted resources to respond to SafeGraph's commercial data collection. *See* FAC ¶¶ 4, 12-15. Instead, Plaintiffs stake their Fourth Amendment claim to a reasonable expectation of privacy in the "whole of their physical movements." FAC ¶ 92.

The concept of privacy under the Fourth Amendment is a personal right, inuring to natural persons. *See Alderman v. U.S.*, 394 U.S. 165, 174 (1969); *see also Carpenter v. U.S.*, 138 S. Ct. 2206, 2213 (2018). Corporations, like CCSJ, are legal fictions and have no cognizable right of privacy. *Patel v. Cty. of Montclair*, 798 F.3d 895, 897 n.1 (9th Cir. 2015); *Fleck & Assocs., Inc. v. Phoenix Cty. of an Ariz. Mun. Corp.*, 471 F.3d 1100, 1105 (9th Cir. 2006). Further, a corporation has no legally protected interest in the whole of its physical movements because artificial entities make no physical movements, let alone of the type that generate opted-in cell phone location data. *See Fleck*, 471 F.3d at 1105. Thus, CCSJ lacks direct standing for its Fourth Amendment claim.

### b.   The FAC Fails to Establish any Cognizable, Individual Fourth Amendment Injury

Despite Plaintiffs' central and repeated allegation that SCC sought to weaponize location data against them in enforcement actions, no location data was used in connection with the State Nuisance Action or any other enforcement proceeding against Plaintiffs. RJN, Ex. 2 at 5-10. SCC brought the State Nuisance Action because of McClure's public statements and admissions under oath, SCC's onsite inspections, and CCSJ's webcasts of its services and non-compliance with court orders. *Id.* at 15. SafeGraph's data was not a factor in the court's summary adjudication against Plaintiffs or any other matter in the State Nuisance Action, (*see id.* at 14-30), or in the disposition of the 2020 Suit, (*see* RJN, Ex. 3 at 8-22). Plaintiffs' alleged Fourth Amendment injury of having location data weaponized against them does not "actually exist." *Spokeo,* 578 U.S. at 340.

Plaintiffs also fail to allege their hypothetical injury with particularity. Plaintiffs' make no effort to connect McClure, the only named individual Plaintiff, to their general allegations about commercial data

collection. FAC ¶¶ 55-85. The FAC does not identify any CCSJ member whose data was either collected or used in connection with SCC's enforcement proceedings, or allege that any CCSJ member was the object of an individualized enforcement action. The Ho Report confirms that SafeGraph did not share individual location data with third parties, including Ho and SCC. RJN Ex. 1, at 4. Thus, the FAC fails to plausibly allege any actual or particularized Fourth Amendment injury.

### c.   CCSJ Lacks Associational Standing

While the FAC neither expressly asserts associational standing nor contains the factual allegations necessary to support its application in this case, Plaintiffs do not, and cannot, establish the minimum requirements for associational standing. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). First, Plaintiffs' members do not have standing to sue in their own right because the FAC alleges no injury traceable to SafeGraph or that is redressable by the requested relief. Second, individual data privacy interests under the terms of service of online providers that a person utilizes for their own recreational or entertainment reasons are not germane to a non-profit corporation "organized exclusively for religious purposes." FAC ¶ 12; *see Am. Baptist Churches in the U.S.A v. Meese*, 666 F.Supp. 1358, 1363-64 (N.D. Cal. Mar. 30, 1987); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1036 (6th Cir. 2022). Third, the centrality of individual privacy to the claims and the requested monetary relief requires the participation of individual CCSJ members. *See Hammerling v. Google LLC*, 615 F.Supp. 3d. 1069, 1088-90 (N.D. Cal. July 18, 2022); *United Union of Roofers, Waterproof., & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990).

### 2.   The FAC Fails to Allege Any Injury That is Traceable to SafeGraph

In addition to establishing a concrete and particularized harm, Plaintiffs must also show that the harm is causally connected or traceable to the challenged acts of SafeGraph, and do not result from "the independent action of some third party[.]" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). No harm alleged in the FAC is traceable to SafeGraph.

### a.   Plaintiffs' Fourth Amendment Claim is Not Traceable to SafeGraph

Plaintiffs fail to allege SafeGraph caused any invasion of privacy. Instead, Plaintiffs allege that

"thousands of apps" and Google collected the location data at issue. FAC ¶¶ 57, 63-67. The FAC acknowledges SafeGraph received only second-hand location data, after that data was collected by third-party data companies, outside of SafeGraph's control, and then licensed or sold to SafeGraph. FAC ¶ 55 ("*if an app acquires a user's location data* [via the app's geo-tracking feature], SafeGraph *could* also receive that data") (emphasis added); *id*. ¶¶ 55-85. While Plaintiffs discuss, at length, the data collection and sharing practices of Google and application companies, none of those allegations pertain to SafeGraph. *See, e.g.*, FAC ¶ 59 ("*[t]he apps* do not inform smartphone users that their location data is being disclosed to third-party data companies like SafeGraph; *id.* ¶ 60 ("*Google customers* are not informed their personal information is sold *in Google's RTB process*.") (emphases added). Because the Fourth Amendment injury relies on the allegedly unlawful collection of data and Plaintiffs allege that third parties, *not SafeGraph*, actually collected the data, it is not traceable to SafeGraph.

### b.    Plaintiffs' First Amendment Claims Are Not Traceable To SafeGraph

Plaintiffs' First Amendment claims are similarly misdirected at SafeGraph and demonstrably false. Plaintiffs' allegations are essentially the same throughout the three counts: SCC used SafeGraph for the targeted collection of CCSJ members' location data for SCC's enforcement actions because of CCSJ's religiously-based refusal to comply with SCC's COVID-19 orders. *See* FAC ¶¶ 108-109, 113-116, 123.

The Ho Report shows that SafeGraph's data included nearly 26,000 different commercial and public POI in SCC. RJN, Ex. 1 at 4, 6-7. Indeed, the Ho Report's statistical analysis compared the Patterns "visits" to CCSJ against these tens of thousands of other locations. *Id.* at 6, Figure 2. The Ho Report also shows that SafeGraph's data included CCSJ as a POI at least as early as January 1, 2020, months before the onset of COVID-19 or SCC's implementation of any COVID restriction. *Id.* This confirms SafeGraph did not "target" CCSJ-related data because of religious activity or any agreement with SCC. Rather, SafeGraph included CCSJ as a POI in its data in the ordinary course of SafeGraph's commercial data business and well before the grounds for Plaintiffs' dispute with SCC even existed. Plaintiffs tacitly admit as much. FAC ¶¶ 23, 31.

The upshot for standing purposes is that Plaintiffs' alleged First Amendment injuries are not

traceable to SafeGraph because Plaintiffs allege that third parties performed the data collection.  Next, SafeGraph did not "target" CCSJ for data collection or provide any targeted analysis of the data or other services to SCC. Instead, SCC contracted with Ho to analyze SafeGraph's pre-existing research dataset relating to thousands of different POI throughout SCC. Further, SafeGraph had no role in promulgating SCC's COVID-19 orders or in SCC's alleged decision to collect and use location data in service of its litigation, and the FAC alleges none. As the FAC emphasizes, it was SCC who sought to enforce its policies through the State Nuisance Action. SafeGraph was neither aware of, a party to, nor had any interest in the outcome of any enforcement action against Plaintiffs.

### 3.    Plaintiffs' Claims Are Not Redressable by the Requested Relief

Plaintiffs seek only monetary damages to redress their purported injuries. FAC ¶¶ 98, 110, 118, 125. Because defendants are immune from liability from such claims under the *Noerr-Pennington* doctrine, Plaintiffs' claims are not likely to be redressed by a favorable decision from this Court. "*Noerr–Pennington* immunity now applies to claims under § 1983 that are based on the petitioning of public authorities." *Empress LLC v. City and Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005). The immunity broadly protects conduct that is "incidental" or "ancillary" to litigation. *Theme Promo., Inc. v. News. Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008). Pre-litigation and discovery matters are immunized, as is a party's provision of support to litigation, even when that party is not also a participant in the litigation. *Sosa v. DirectTV, Inc.*, 437 F.3d 923, 935-37 (9th Cir. 2006)*; Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993); *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 397–99 (4th Cir. 2001).

The crux of the FAC is that SCC marshaled location data for use as supplemental evidence in *extant* litigation against the Plaintiffs. FAC ¶¶ 40, 102, 114. Regardless of whether the FAC is read to allege SafeGraph was an agent of SCC or a third party providing aid in support of objectively meritorious litigation, it alleges nothing more than protected conduct incidental to litigation. *Liberty Lake*, 12 F.3d at 157-59. Because the FAC alleges only conduct that is immunized from liability under *Noerr-Pennington*, Plaintiffs' claims for damages are not redressable. *Sosa*, 437 F.3d at 935-37.

**B.**   **PLAINTIFFS' CLAIMS ARE TIME-BARRED**

California's two-year statute of limitations for personal injury actions applies to Plaintiffs' claims. *Nance v. Ward*, 142 S. Ct. 2214, 2225 (2022); *Mills v. City of Covina,* 921 F.3d 1161, 1166 (9th Cir. 2019); *see* Cal. Civ. Proc. Code § 335.1. Federal law determines the accrual date of a § 1983 cause of action, which, for alleged constitutional violations, runs from the time the alleged violation occurred. *Mills*, 921 F.3d at 1166.

Plaintiffs allege the challenged acts began in early 2020 and continued for a one-year period, meaning the alleged geofence operation concluded in mid-2021 *at the latest*. FAC ¶¶ 1, 7, 25, 37. In reality, the Ho Report analyzed a data sample from the period January 1, 2020 through February 28, 2021. RJN, Ex. 1, at 4. SCC's COVID-19 health ordinances were implemented in March 2020 and rescinded or enjoined in February 2021. *See RJN*, Ex. 4 at 3. SCC fined Plaintiffs for violating the COVID restrictions from August 2020 through June 2021. *Id. at 9*. And SCC procured a temporary restraining order against Plaintiffs in state court in November 2020. *Id.* at 10. Every act conceivably challenged by the FAC—whether the alleged geofence, SCC's COVID ordinances, administrative fines, or the state enforcement proceedings— concluded nearly three years before Plaintiffs brought the instant action, and the claims against SafeGraph are time-barred.

**C.**   **THE FAC FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE SECTION 1983 CLAIM AGAINST SAFEGRAPH**

**1.**   **The FAC Fails Against SafeGraph for Lack of State Action**

As a private company, SafeGraph is presumptively free of constitutional constraints. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 995–99 (9th Cir. 2020). A plaintiff challenging private conduct as state action under § 1983 must satisfy two independent inquiries, developed in *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937-40 (1982): (1) the state policy requirement; and (2) the state actor requirement. *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1121-22 (9th Cir. 2022); *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023). Here, Plaintiffs must show both. *See Lugar*, 457 U.S. at 937–40; *O'Handley*, 62 F.4th at 1157; *see also Pasadena Repub. Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021). The FAC establishes neither, and it must be dismissed

against SafeGraph in its entirety.

a.   **The FAC Fails the State-Policy Requirement**

The key question under the state-policy requirement is "whether the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible.'" *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (quoting *Lugar*, 457 U.S. at 937). Answering this question requires scrupulous attention to the "the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004. Here, Plaintiffs complain about SafeGraph's acquisition of commercially available location data and aggregating it to a specific POI, CCSJ. *See* FAC ¶¶ 4, 9, 11, 51-81. To satisfy the state-policy requirement, then, Plaintiffs needed to allege SafeGraph exercised state authority through its normal data compilation and processing actions. *See Wright*, 48 U.S. at 1121. They do not, and cannot.

The FAC makes no reference to any sovereign state authority and allows for no reasonable inference that SCC somehow deputized SafeGraph, vested it with law enforcement powers, or afforded it special privileges. The most Plaintiffs muster is a single, conclusory statement that SCC's County Counsel ensured the alleged "surveillance operation . . . complied with the law." FAC ¶ 34. This is insufficient.

Plaintiffs allege only that SafeGraph, like countless other companies, purchased from Google and application companies information that was freely available in the digital marketplace because their users consented to the resulting data's use in that way. FAC ¶¶ 55, 71. Like Twitter's right to moderate content in *O'Handley*, SafeGraph's right to acquire, curate, and disseminate data "derive[s] from its user agreement[s]" and private contracts, "not from any right conferred by the State." *O'Handley*, 62 F.4th at 1156. As this Court recognizes, the conduct Plaintiffs challenge is simply "routine commercial behavior" and does not reflect the power of any sovereign State. *Williams v. Facebook, Inc.*, 384 F.Supp.3d 1043, 1055 (N.D. Cal. Dec. 18, 2018); *In re iPhone Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. June 12, 2012).

The FAC similarly fails to allege that SafeGraph enforced any state-imposed rule when it collected and aggregated commercially available information. Affording the FAC every inference, SafeGraph created its products using its own technical capabilities and information from third party data brokers, subject to the

16

private rules of data exchanges and contracts, without support from SCC. *See* FAC at ¶¶ 23-26, 55-85. There is no plausible suggestion that SafeGraph ceded control over its internal operations to become "the government's private enforcers." *O'Handley*, 62 F.4th at 1156. Far from surrendering control to SCC, the FAC repeatedly alleges the opposite—that SafeGraph operated without "oversight, boundaries, or limitations" and with "unbridled discretion." FAC ¶¶ 7, 96.

**b.  SafeGraph's Private Data Business Is Not Fairly Attributable To The State**

The second step of the *Lugar* framework, the state-actor requirement, asks whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. This Circuit employs any of four tests to determine the answer: the public function test; the state compulsion test; the nexus test; and the joint action test. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). The FAC is unclear as to which theory Plaintiffs believe SafeGraph is transformed into a state actor, but the nexus and joint action tests appear most relevant. *See* FAC ¶ 31. Regardless of the test, SafeGraph is not a state actor and the FAC must be dismissed.

**(i)  The FAC Does Not Satisfy the Nexus Test**

"There are two different versions of the nexus test. The first (and less common) formulation asks whether there is pervasive entwinement of public institutions and public officials in [the private actor's] composition and workings." *O'Handley* 62 F.4th at 1157 (internal quotations omitted). Under the pervasive entwinement test, courts consider whether the private organization relies on public funding, whether it is composed mainly of public officials, and whether those public officials "dominate decision making of the organization." *Villegas v. Gilroy Garlic Fest. Ass'n.*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc). Because SafeGraph is a private business, it meets none of these factors and the FAC does not allege any facts to the contrary. *See O'Handley* 62 F.4th at 1157.

The second version of the nexus test examines whether the government exerted substantial coercive power over a private party, either through threats of adverse consequences or promises of positive incentives that are so significant they effectively eliminate the private actor's freedom of choice. *Id.* at 1157-58. The FAC alleges no such facts. To be sure, the FAC alleges that SafeGraph participated in the geofence operation

17

at SCC's "behest." FAC ¶¶ 25, 102. But that is a far cry from the level of compulsion required. *Carlin Commc'n., Inc.v. Mount. States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir.1987) (holding nexus test satisfied where county threatened to prosecute a private phone company if it refused to terminate a third party's dial-a-message service).

Plaintiffs likewise do not allege that SCC offered SafeGraph any incentive for its alleged assistance in SCC's geofence operation. Unlike Ho, SafeGraph is not even alleged to have contracted with SCC (and it did not). *Compare* FAC ¶ 31 *with* ¶ 36. The absence of even these minimal allegations is particularly damning because, even if Plaintiffs alleged these or similar facts, they still would not plausibly suggest that SCC stripped SafeGraph of its independent judgment and compelled its actions. *See O'Handley*, 62 F.4th at 1157-58. Courts draw "a sharp distinction between attempts to convince and attempts to coerce." *Id.* at 1158. The absence of any allegation intimating that SCC pressured SafeGraph into taking any action fails the nexus test.

### (ii)   The FAC Does Not Satisfy the Joint Action Test

Joint action exists only when the State "significantly involves itself in the private parties' actions and decision making" in a "complex and deeply intertwined process." *Rawson v. Rec. Innov., Inc.*, 975 F.3d 742, 753 (9th Cir. 2020). A plaintiff can show joint action either "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao*, 698 at 1128, 1140.

Under the conspiracy approach, Plaintiffs must show a "meeting of the minds" between SCC and SafeGraph to "violate constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). They cannot. The FAC alleges SafeGraph's data was used for "research purposes" that were "separate from [SCC's] enforcement of the COVID-19 fines[,]" FAC ¶ 4, and that "[t]he County" alone "sought to use the information in its ongoing state enforcement action[,] *id.* ¶ 6. Plaintiffs do not allege SafeGraph was even aware of SCC's dispute with CCSJ. At most, the FAC evidences SafeGraph's good faith mission to support public health at the onset of the pandemic by making its pre-existing datasets available *for free* for non-commercial research. *See* FAC ¶¶ 31, 39. Ironically, Plaintiffs now seek to "weaponize" SafeGraph's

public-interest mission in service of their dispute with SCC. But no plausible allegation suggests SafeGraph "agreed to serve as an arm of the government" specifically to fulfill SCC's purportedly unconstitutional goals and no conspiracy exists. *O'Handley* 62 F.4th at 1159.

The "willful participant" approach is a demanding test and requires evidence of a high degree of interdependence between the state and private party to rise to the level of state action. *See Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). "[C]lose cooperation" is not enough. *Mathis v. Pac. Gas and Elec. Co.*, 75 F.3d 498, 504-05 (9th Cir. 1996). *Tsao* and *Rawson* exemplify the sort of inextricable entwinement required by this test. 698 F.3d at 1140-41; 975 F.3d at 754. By contrast, *Mathis* and *O'Handley* stand for the rule that "consultation and information sharing" are insufficient to find state action. 75 F.3d at 504; 62 F.4th at 1160. This was true in *O'Handley* even where Twitter developed a priority pathway for communicating with state officials and acted in accordance with over 98% of those officials' requests, because the State did not actually usurp or dominate Twitter's internal processes. 62 F.4th at 1156-60.

The FAC not only falls short of the high standard in *Tsao* and *Rawson*, it does not even show the level of collaboration held insufficient for state action in *Mathis* and *O'Handley*. Indeed, Plaintiffs affirmatively allege the opposite; that SCC provided "no oversight, boundaries, or limitations." FAC ¶ 96. Plaintiffs claim only, and without any specificity, that SCC requested a geofence around various POI in SCC and "ratified" the operation after the fact. *Id.* ¶ 39. But deciding how, when, and where to acquire and curate data were left to SafeGraph's "unbridled discretion." *Id.* ¶ 96. This suggests no more than "an arms-length relationship" between SafeGraph and SCC. *O'Handley,* 62 F.4th at 1160. Plaintiffs fail to show joint action, and SafeGraph is not a state actor.

### 2. The FAC Still Fails to Allege Facts Necessary to State A Plausible Section 1983 Claim

As this Court explained in *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, standing issues often overlap with the merits of privacy claims. 402 F. Supp. 3d 767, 788 (N.D. Cal. Sep. 9, 2019). That is true here because Plaintiffs' alleged invasion of privacy underpins each of their four claims. SafeGraph respectfully submits, therefore, the standing arguments against Plaintiffs alleging a Fourth Amendment injury in fact or any injury traceable to SafeGraph are also salient to whether Plaintiffs have adequately pled

1   an invasion of privacy or alleged the causation element necessary to each § 1983 claim, respectively. In this

2   section, SafeGraph makes additional arguments going only to the merits.

3             **a.**      **No Reasonable Expectation of Privacy Interest in Anonymized, Opted-**

4                      **In Data Exists**

5        The touchstone of Fourth Amendment privacy is "whether ''a person ha[s] exhibited an actual

6   (subjective) expectation of privacy,'' and ''the expectation [is] one that society is prepared to recognize as

7   'reasonable.'" *Katz v. U.S.*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring); *Cal. v. Ciraolo*, 476 U.S. 207,

8   211 (1986). When determining the existence of a subjective privacy interest, courts look to whether an

9   individual sought "to preserve [something] as private." *Bond v. U.S.*, 529 U.S. 334, 338 (2000). Voluntarily

10   providing or consenting to the disclosure of information to third parties generally eliminates any expectation

11   of privacy, not merely renders it unreasonable. *U.S. v. Wahchumwah*, 710 F.3d 862, 867 (9th Cir. 2013);

12   *see Carpenter*, 138 S. Ct. at 2222 (finding it is "the rare case where [a person] has a legitimate privacy

13   interest in records held by a third party").

14        Plaintiffs' reliance on *Carpenter* is misplaced. *Carpenter*'s narrow holding focused on "the

15   inescapable and automatic nature of [CSLI] collection" by cellular carriers, and the corresponding lack of

16   any meaningful opportunity for the target to consent either to its collection or to its disclosure when

17   compelled by law enforcement. 138 S. Ct. at 2223. Here, the location data at issue was not information the

18   unidentified individuals from whom it originated sought to preserve as private because SafeGraph received

19   such data from vendors *only when the users consented to its collection and use.* RJN, Ex. 1 at 4; *see* FAC

20   ¶¶ 55, 71. Plaintiffs do not allege SafeGraph received the data under any use restriction from the applications

21   or from Google. *See Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 776. The users' voluntary

22   introduction of their information into the data market renders *Carpenter*'s reasoning inapposite.

23        Further, the FAC conflates SafeGraph's Patterns data, which was fully anonymized through

24   differential privacy, with pseudonymous mobility data. Again, SafeGraph never disclosed raw location data.

25   RJN, Ex. 1 at 4. But even de-identified location data, which provides no individual information, "is not, on

26   its face, sensitive or private," making it different in scope and kind from CLSI. *FTC v. Kochava Inc.*, -- F.

27   Supp. 3d. --, 2023 WL 3249809, at *9 (D. Id. May 4, 2023). No Fourth Amendment protection attaches to

28

opted-in data, and the alleged privacy invasion underpinning each of Plaintiffs' claims fails. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979).

      **b.**      <u>**Plaintiffs' Religious Activity Was Not a Motivating Factor in SafeGraph's Data Business**</u>

To allege First Amendment claims, Plaintiffs must show their constitutionally-protected activity was a "substantial" or "motivating factor" in Defendants' conduct. *Az. Students' Ass'n v. Az. Bd. of Reg.*, 824 F.3d 858, 867 (9th Cir. 2016). Here, Plaintiffs theorize SafeGraph helped SCC "punish [CCSJ for exercising their religious rights in violation of SCC's orders] by spying on church congregants during the COVID-19 pandemic." FAC ¶ 123. Plaintiffs do not meet their burden because the allegations supporting the retaliation claim are self-contradictory and demonstrably false.

First, the FAC contradicts its own allegations that SafeGraph "specifically targeted CCSJ." *Id.* ¶ 26. Plaintiffs elsewhere allege SafeGraph collected location data not just from CCSJ, but also from other "various businesses and organizations" both within and outside of SCC. FAC ¶¶ 23, 39. Second, the FAC repeatedly alleges SCC's pending enforcement action for CCSJ's violations of its COVID-19 guidelines was *the* cause of the geofence, not Plaintiffs' religious activities. FAC ¶¶ 6, 40, 97. Third, the Ho Report shows that SafeGraph data relating to CCSJ existed as of January 1, 2020, (RJN, Ex. 1 at 4)—*months before* the onset of the pandemic, SCC's COVID rules, or CCSJ's resumption of in-person services in May 2020, RJN, Ex. 2 at 5. This fact, alone, unequivocally debunks any allegation that SafeGraph "targeted" or helped to "punish" CCSJ because of its violations of SCC's COVID restrictions.

## V.    <u>CONCLUSION</u>

The FAC must be dismissed with prejudice because Plaintiffs lack standing and each claim is time-barred. Specifically, Plaintiffs articulate no cognizable Fourth Amendment injury or any harm traceable to SafeGraph or redressable by the requested relief. Separately, Plaintiff's legal and factual inability to show SafeGraph was a state actor, a reasonable expectation of privacy in opted-in data, or that SafeGraph acted of out religious animus precludes any claim under 42 U.S.C. § 1983. The FAC as to SafeGraph must be dismissed in its entirety.

DATED:  December 18, 2023

                          KAUFMAN DOLOWICH, LLP

                          By: */s/ Aimee G. Hamoy*
                              Aimee G. Hamoy
                              Attorneys for Defendant
                              SAFEGRAPH