Robert Tyler, Esq. CA Bar No. 179572
btyler@faith-freedom.com
Mariah Gondeiro, Esq. CA Bar No. 323683
mgondeiro@faith-freedom.com
Julianne Fleischer, Esq. CA Bar No. 337006
jfleischer@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 600-2733
Facsimile: (951) 600-4996

Attorneys for Plaintiffs **Calvary Chapel San Jose and Pastor Mike McClure**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**CALVARY CHAPEL SAN JOSE**, a California Non-Profit Corporation; **PASTOR MIKE MCCLURE**, an individual;

Plaintiffs,

vs.

**SANTA CLARA COUNTY;** and **SAFEGRAPH;**

Defendants.

Case No.: 3:23-cv-04277-VC

**AMENDED RESPONSE TO DEFENDANT SAFEGRAPH'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(1) AND (6)**

Date: February 15, 2024
Time: 10:00 AM
Judge: Hon. Vince Chhabria
Dept.: Courtroom 4-17th Floor

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. SafeGraph Tracked CCSJ Congregants' Private, Sensitive Location History At The Behest Of The County .......... 2

B. SafeGraph Gathers Its Location Data Through Various Means .......... 3

1. SafeGraph's software development kit ("SDK") .......... 3

2. Google's real-time bidding auctioning process and location history .......... 3

III. LEGAL STANDARDS .......... 3

IV. ARGUMENT .......... 4

A. Plaintiffs Have Standing To Bring Their Claims .......... 4

1. Plaintiffs allege a concrete injury .......... 5

2. Plaintiffs' First and Fourth Amendment claims are traceable to SafeGraph .......... 6

3. Defendants are not immune from liability under the *Noerr-Pennington* doctrine. 7

4. The interests at stake in this lawsuit are germane to CCSJ's purpose .......... 8

5. Plaintiffs' claims do not require the participation of individual CCSJ members .......... 9

B. Plaintiffs' Claims Are Timely Raised .......... 9

C. Plaintiffs Allege Facts Sufficient To State A Plausible Section 1983 Claim Against SafeGraph .......... 10

1. Plaintiffs allege facts that show Safegraph is a state actor subject to section 1983 liability .......... 10

2. Plaintiffs allege facts that show Safegraph violated their Fourth Amendment rights .......... 13

3. Plaintiffs allege facts that show Safegraph violated their First Amendment rights .......... 14

V. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

Cases

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)....................11
*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017)....................9
*Bennet v. Spear*,
520 U.S. 154 (1997)....................6
*Blum v. Yaretsky*,
457 U.S. 991 (1982)....................11
*Camara v. Municipal Court of City and County of San Francisco*,
387 U.S. 523 (1967)....................13
*Carpenter v. United States*,
138 S. Ct. 2206 (2018)....................13
*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
235 F. Supp. 3d 1132 (E.D. Cal. 2017)....................7
*Cummings v. Connell*,
402 F.3d 936 (9th Cir. 2005)....................9
*De Anza Properties X, Ltd. V. County of Santa Cruz*,
936 F.2d 1084 (9th Cir. 1991)....................9
*Dennis v. Sparks*,
449 U.S. 24 (1980)....................11
*Fulton v. City of Phila.*,
141 S. Ct. 1868 (2021)....................15
*Garcia v. City of Los Angeles*,
No. CV196182DSFPLAX, 2020 WL 6586303 (C.D. Cal. Sept. 15, 2020)....................58
*Harvest Rock Church, Inc. v. Newsom*,
985 F.3d. (9th Cir. 2020)....................15
*Heartland Acad. Cmty. Church v. Waddle*,
427 F.3d 525 (8th Cir. 2005)....................5
*Howerton v. Gabica*,
708 F.2d 380 (9th Cir. 1983)....................11
*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977)....................5
*In re Facebook, Inc. Internet TrackingLitigation*,
956 F.3d 589, 599 (9th Cir. 2020)....................6
*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019)....................6
*In re Med. Cap. Sec. Litig.*,
842 F. Supp. 2d 1208 (C.D. Cal. 2012)....................4
*Jackson v. Metro. Edison Co.*,
419 U.S. 345 (1974)....................12
*Jensen v. Lane County*,
222 F.3d 570 (9th Cir. 2000)....................11

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ........ 11
*Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002) ........ 11
*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ........ 4
*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ........ 10, 11
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ 4, 5
*Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498 (9th Cir. 1996) ........ 10
*Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019) ........ 9
*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ........ 12, 13
*Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161 (9th Cir. 2021) ........ 10, 12
*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ........ 6
*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ........ 8
*Rawson v. Rec. Innov., Inc*, 975 F.3d 742 (9th Cir. 2020) ........ 13
*Riley v. California*, 573 U.S. 372 (2014) ........ 13
*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987) ........ 4
*Roman Catholic Diocese of Brooklyn, v. Cuomo*, 141 S. Ct. 63 (2020) ........ 14
*S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128 (9th Cir. 2021) ........ 15
*Smith v. Maryland*, 442 U.S. 735 (1979) ........ 13
*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ........ 7
*Tandon v. Newsom*, 593 U.S. 61 (2021) ........ 15
*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) ........ 8
*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730 (9th Cir. 1979) ........ 4
*Tsao v. Desert Palace*, 698 F.3d 1128 (9th Cir. 2012) ........ 12
*Am. Baptist Churches in the U.S.A. v. Meese*, 666 F. Supp. 138 (N. D. Cal. 1987) ........ 9
*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ........ 10

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) .......... 4
*Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952 (C.D. Cal. 2001) .......... 4
*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998) .......... 4

Statutes

Cal. Civ. Proc. Code § 335.1 .......... 9
U.S. Const. Amend. IV .......... 13

## I. INTRODUCTION

In early 2020, Defendant Santa Clara County ("County") draconianly implemented an onslaught of COVID-19 health orders which dictated when, how, and where individuals could go. Unbeknownst to the public and Plaintiffs, the County and Defendant SafeGraph ("Defendant" or "SafeGraph") embarked on an invasive and warrantless geofencing operation to track county residents for research purposes.

Included as a target in this illegal operation was Plaintiff Calvary Chapel San Jose ("CCSJ"). Defendants specifically targeted CCSJ using the geofencing tool without a warrant. Defendants put multiple geofences around the Church's property so they could track when and where individuals were on the premises. This operation took place over a year with seemingly no oversight, boundaries, or limitations – meaning Defendants could track churchgoers in the sanctuary, prayer room, or bathroom. Left unaddressed, the County's conduct could set a terrifying precedent – allowing the government to target and spy on any individual or group at any time for any duration or reason.

Defendant SafeGraph attempts to dismiss CCSJ and Plaintiff Pastor Mike McClure's (collectively, Plaintiffs) lawsuit, claiming they do not have standing, their claims are time-barred, and they fail to state a claim for relief. *See* Defendant SafeGraph's Motion to Dismiss Plaintiffs' First Amended Complaint ("Mot."), ECF 34. The Court should deny the motion for three reasons.

First, Plaintiffs have standing to pursue their claims. Plaintiffs have alleged concrete injuries traceable to SafeGraph. SafeGraph, at the direction of County, illegally surveilled CCSJ, and embarked on an invasive and warrantless geofencing operation of Plaintiffs. Defendants are not immune from liability under the *Noerr-Pennington* doctrine because Defendants' geofencing operation is not incidental to litigation, nor is it related to the County's enforcement of COVID-19 fines. The County directed and ratified the geofencing operation to help it understand the effects of its COVID-19 orders.

Second, Plaintiffs timely bring their claims. Defendant attempts to cherry-pick dates from a single expert report to allege that Plaintiffs' claims are time-barred. However, Plaintiffs claims are based upon a period spanning the course of the COVID-19 pandemic, not a limited time identified in a single report.

Third, Plaintiffs allege facts sufficient to state their claims. SafeGraph, though a private entity, performed its surveillance and monitoring of Plaintiffs at the direction of the County. As such, SafeGraph is a state actor subject to section 1983 liability. Plaintiffs also adequately state claims for relief under the First Amendment and Fourth Amendment.

Accordingly, this Court should deny SafeGraph's motion to dismiss.

## II. BACKGROUND

### A. SafeGraph Tracked CCSJ Congregants' Private, Sensitive Location History At The Behest Of The County

Throughout the COVID-19 pandemic, SafeGraph worked with government entities like the Center for Disease Control and Prevention ("CDC"), San Francisco, San Jose, and Santa Clara County to surveil the visit patterns at various businesses and organizations. FAC, ¶ 23. SafeGraph's research and data was derived from cell phone users' location data. *Id.*, ¶ 24.

At the behest of the County, SafeGraph put two geofences around CCSJ and surveilled the churchgoers within the church premises for over a year during the COVID-19 pandemic. *Id.*, ¶ 25. The County did not simply approve or acquiesce to SafeGraph's surveillance of CCSJ. *Id.*, ¶ 30. SafeGraph acted as an instrument of the County to assist the County in understanding the effects of its COVID-19 orders. *Id.*, ¶ 31.

The surveillance operation was ratified by County Counsel James Williams and County Health Officer Dr. Sara Cody – officials who are considered final policy makers in their respective departments. *Id.*, ¶ 32. Dr. Sara Cody oversees the County's health department and had final authority regarding the implementation of policies related to COVID-19, as well as research projects analyzing the effects of the County's orders. *Id.*, ¶ 33. James Williams oversaw the County's legal department and provided legal advice to the County throughout the COVID-19 pandemic. *Id.*, ¶ 34. Specifically, he was required to approve of Defendants' geofencing operation to ensure it complied with the law. *Id.*

Defendants gathered location information of all individuals who entered the geofences established around CCSJ. *Id.*, ¶ 37. Defendants were able to gather location data from congregants from anywhere within the bounds of the geofences, including the nursery, prayer room, offices, classrooms, sanctuary, and bathroom. *Id.*, ¶ 38.

As ratified by Dr. Cody and James Williams, Defendants collected location data from CCSJ and other businesses and organizations within the County for over one year – as part of a well-orchestrated geofencing operation. *Id.*, ¶ 39. The County sought to weaponize the location data against CCSJ in its ongoing state enforcement action filed in the Santa Clara County Superior Court, where they seek to collect millions from the church for violating COVID-19 public health orders. *Id.*, ¶ 40. The Defendants did not acquire a warrant prior to putting a geofence around CCSJ. *Id.* ¶ 44. Geofences reveal sensitive, private information about where people travelled and can create inferences about what a person might have been doing. *Id.*,¶ 47.

**B. SafeGraph Gathers Its Location Data Through Various Means**

1. **SafeGraph's software development kit ("SDK")**

SafeGraph harvests its user location data from apps that use its SDK. *Id.*, ¶ 55. SafeGraph's SDK gathers information from any geo-tracking feature in cell-phone apps. *Id.* Thus, if an app acquires a user's location data, SafeGraph could also receive that data. *Id.* The apps do not inform smartphone users that their location data is being disclosed to third-party data companies like SafeGraph. *Id.*, ¶ 59.

2. **Google's real-time bidding auctioning process and location history**

SafeGraph also gathers location data through Google's real-time bidding ("RTB") auction process. *Id.*, ¶ 60. Google customers are not informed that their personal information is sold in Google's RTB process. *Id.* RTB is the process by which internet publishers auction off ad space in their apps or on their websites. *Id.*, ¶ 61. In doing so, they share sensitive user data – including geolocation, device IDs, and browsing history with dozens of different data companies and data brokers like SafeGraph. *Id.*

SafeGraph acquires location data from smartphones, including Android and iPhone users whose data is stored in Google's location history database. *Id.*, ¶ 83. Plaintiffs are made up of Android and iPhone users whose location data was derived through either Google's RTB process or SafeGraph's SDKs. *Id.*, ¶ 84. Plaintiffs never consented to SafeGraph or the County obtaining their location data from their Smartphones. *Id.*, ¶ 85.

## III. LEGAL STANDARDS

A Federal Rules of Civil Procedure 12(b)(1) motion challenges a court's subject matter jurisdiction either facially, claiming that the facts accepted as true do not establish jurisdiction, or

factual, claiming that the facts establishing jurisdiction are not true. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In determining a facial attack, a court must accept the allegations in the complaint as true. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Likewise, in determining a factual attack, "when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim" (*id*. at 1122 n.3), the court "must 'assume [ ] the truth of the allegations in a complaint ... unless controverted by undisputed facts in the record.' " *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

In considering a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc*., 135 F.3d 658, 661 (9th Cir. 1998). This is a very liberal standard. "In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face." *In re Med. Cap. Sec. Litig.*, 842 F. Supp. 2d 1208, 1210 (C.D. Cal. 2012). "A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct." *Id.*

This standard is especially liberal when applied to the constitutional claims alleged in this action, which are governed by Rule 8. Rule 8's burden is "minimal," and requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 955 (C.D. Cal. 2001) (quotations omitted). "It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met." *Id.*

## IV. ARGUMENT

### A. Plaintiffs Have Standing To Bring Their Claims

Article III standing requires a plaintiff to demonstrate: (1) an injury in fact; (2) a causal connection; and (3) redressability. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)

(citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court.'" *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 561 (citations omitted).

Moreover, the Supreme Court has held that an association has standing to bring suit on behalf of its own members when:

> (a) its members would have standing to sue in their own right: (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiff CCSJ has asserted associational standing because its members have alleged a concrete injury traceable to SafeGraph. CCSJ satisfies the other factors because it seeks nominal damages and the individual interests in this lawsuit are aligned with CCSJ's purpose. Plaintiff McClure also has individually satisfied the standing requirements outlined in *Lujan*.

1. **Plaintiffs allege a concrete injury**

Plaintiff CCSJ brings its claims on behalf of its church members whose privacy interests were invaded by the Defendants. SafeGraph improperly claims that CCSJ lacks standing to bring claims on behalf of its members because the Fourth Amendment is a personal right. Mot. at 11-12. Despite the personal interests of the Fourth Amendment, an organization may still bring Fourth Amendment claims on behalf of its members. *See Garcia v. City of Los Angeles*, No. CV196182DSFPLAX, 2020 WL 6586303, at *2 (C.D. Cal. Sept. 15, 2020); *see also Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 532 (8th Cir. 2005) ("The Supreme Court has never held (and neither have we) that associational standing is not available to § 1983 plaintiffs alleging Fourth Amendment violations."). In *Garcia*, the court noted that "[n]either the Supreme Court nor the Ninth Circuit has directly addressed whether organizations can bring section 1983 claims based on the Fourth Amendment rights of its members." 2020 WL 6586303, at *2. The court concluded, however, that an unincorporated organization that brought claims on behalf of its unhoused members may bring a section 1983 claim asserting violation

of its members' Fourth Amendment rights. *Id.* In reaching this conclusion, the court distinguished a line of cases, recognizing that there are instances where the invasion of personal rights under the Fourth Amendment may be asserted by others. *Id.* at *3.

In *In re Facebook, Inc. Internet Tracking Litigation,* the Ninth Circuit found that the plaintiffs had alleged a clear invasion of the right to privacy because "Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information." 956 F.3d 589, 599 (9th Cir. 2020) ("Facebook"). The Ninth Circuit has noted that "advances in technology can increase the potential for unreasonable intrusions into personal privacy." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019). The Third Circuit has also emphasized that, "[i]n an era where millions of Americans conduct their affairs increasingly through electronic devises, the assertion…that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data…is untenable. Nothing in *Spokeo* or any Supreme Court decision suggests otherwise." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019).

Like Facebook's tracking practices, SafeGraph's practices "allow it to amass a great degree of personalized information." *Facebook,* 932 F.3d at 1272. Plaintiffs allege that SafeGraph collects data from thousands of apps and SDKs, as well as Google's RTB. FAC, ¶¶ 57, 60-66. Users are not informed that their location data is being disclosed to third parties. *Id.*, ¶¶ 58-60. Google also makes it nearly impossible for a user to turn off their location, and even if a user figures out how to delete his or her location history, that information is still available to Google. *Id.*, ¶¶ 72-81. Thus, like *Facebook*, Plaintiffs have alleged an injury because they do not have "a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." 932 F.3d at 1272.

2. **Plaintiffs' First and Fourth Amendment claims are traceable to SafeGraph**

Defendant asserts that Plaintiffs "fail to allege SafeGraph caused any invasion of privacy" (Mot. at 12) and that Plaintiffs' "alleged First Amendment injuries are not traceable to SafeGraph" (Mot. at 14). However, it is immaterial where SafeGraph falls in the "chain of causation." *Bennet v. Spear*, 520 U.S. 154, 169 (1997).

Plaintiffs assert several claims throughout the FAC identifying Defendant SafeGraph's involvement and contribution to Plaintiffs' alleged injuries. Plaintiffs allege that at the behest of the County, SafeGraph put two geofences around CCSJ and surveilled CCSJ (FAC, ¶ 25); SafeGraph acted as an instrument of the County to assist the County in understanding the effects of its COVID-19 orders (*id.*, ¶ 31); County officials ratified SafeGraph's surveillance (*id.*, ¶ 32); and SafeGraph collected location data from CCSJ (*id.*, ¶ 39). These allegations sufficiently establish causation.

3. **Defendants are not immune from liability under the *Noerr-Pennington* doctrine**

Defendant SafeGraph provides no basis or analysis for its conclusion that Defendants are immune from monetary liability under the *Noerr-Pennington* doctrine. Mot. at 14. The *Noerr–Pennington* doctrine provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The Ninth Circuit has made clear that "government actors are only protected by *Noerr–Pennington* if they engage in activity that is properly considered petitioning or sufficiently related to petitioning activity." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1159 (E.D. Cal. 2017) (quotations omitted). And "[t]he Ninth Circuit has generally not interpreted *Noerr–Pennington* to extend immunity to state actors engaging with private entities who are themselves exercising petitioning rights." *Id.*

Here, Plaintiffs allege that Defendants' geofencing operation was agreed upon outside of litigation. FAC, ¶¶ 4, 23. The County agreed to surveil many entities to understand the effects of the COVID-19 orders and social distancing. *Id*. Indeed, the FAC alleges that the "geofencing operation was separate from the County's enforcement of the COVID-19 fines." *Id.*, ¶ 4. Invasive and warrantless geofencing operations bear little resemblance to the sort of governmental petitioning the doctrine is designed to protect. Accordingly, the geofencing operation was not conduct incidental to litigation, and *Noerr-Pennington* immunity does not extend to this "separate and distinct activity." *Sosa,* 437 F.3d at 935.

However, even assuming arguendo that the County and SafeGraph's surveillance can be attributed as incidental to litigation, on at least two occasions, the Ninth Circuit has stated that objectively baseless discovery conduct, undertaken with an improper motive, can constitute sham

litigation activity, even if it occurs in the context of a lawsuit that is otherwise protected by *Noerr-Pennington. See, e.g., id.* at 938 ("[W]e have observed that private discovery conduct, not itself a petition, may fall within the sham exception where *either* the conduct itself, *or* the underlying petition, meets [the] sham litigation test." (emphases added) (citations omitted)); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1079 (9th Cir. 2004) ("Defendants urge us to look only at the merits of the underlying litigation, not at the subpoena. They apparently think a litigant should have immunity for any and all discovery abuses so long as his lawsuit has some merit. Not surprisingly, they offer no authority for that implausible proposition.... [W]e hold that [Noerr-Pennington] is no bar where the challenged discovery conduct is itself objectively baseless.").

*Theofel's* reasoning applies here. Like the defendants in *Theofel* who urged the court to "look only at the merits of the underlying litigation", rather than the challenged conduct, here, Defendants contend that they should have immunity for any and all discovery abuses in "meritorious litigation." *Id.* This is an "implausible position", and *Noerr-Pennington* does not bar "objectively baseless" discovery conduct like an invasive and warrantless search. *Id.*[1]

**4. The interests at stake in this lawsuit are germane to CCSJ's purpose**

SafeGraph claims Plaintiffs cannot satisfy the second prong of associational standing because "individual data privacy interests under the terms of service of online providers that a person utilizes for their own recreational or entertainment reasons are not germane to a non-profit corporation organized exclusively for religious purposes." Mot. at 12 (internal quotations and citations omitted). This argument misconstrues Plaintiffs' allegations.

Through this lawsuit, Plaintiffs seek to hold Defendants accountable for surveilling them during intimate, religious gatherings. FAC, ¶¶ 86-125. Plaintiffs' goals are aligned with the goals of CCSJ. CCSJ is comprised of churchgoers whose religious beliefs require they gather for the teaching of God's Word, worship, prayer, and fellowship. *Id.,* ¶ 13. CCSJ believes its church and sanctuary is a sacred

[1] *Noerr–Pennington's* sham litigation exception also requires proof of subjective intent to use legal process to achieve the evil prohibited by the statute from which exemption is claimed. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). That prong of the test is also satisfied here. Presumably, the purpose of *any* objectively baseless and warrantless search is to uncover private information.

place that should be free from government entanglement. *Id.* Plaintiffs have therefore demonstrated that the individual interests in this case are "directly related" to CCSJ's purpose because "[t]he plaintiffs have asserted that their individual members participate in the sanctuary movement as a matter of religious faith and practice." *Am. Baptist Churches in the U.S.A. v. Meese*, 666 F. Supp. 138, 1364 (N. D. Cal. 1987) (internal quotations and citations omitted).

5. **Plaintiffs' claims do not require the participation of individual CCSJ members**

SafeGraph argues Plaintiffs' claims require individualized participation because "the requested monetary relief requires the participation of individual CCSJ members." Mot. at 12. But Plaintiffs request nominal damages. FAC, ¶¶ 98, 110, 118, 125. "[N]ominal damages are divorced from any compensatory purpose." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017). "[N]ominal damages are awarded to vindicate rights, the infringement of which has not caused actual, provable injury." *Cummings v. Connell*, 402 F.3d 936, 943 (9th Cir. 2005). Thus, "a plaintiff might seek vindication of a right which is not economic in character and for which no substantial non-pecuniary award is available." 1 Dobs, Law of Remedies § 3.3(2), at 295–96.

**B. Plaintiffs' Claims Are Timely Raised**

SafeGraph wrongly asserts that Plaintiffs' claims are time-barred by California's two-year statute of limitations. Mot. at 15; Cal. Civ. Proc. Code § 335.1. "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *De Anza Properties X, Ltd. V. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991). SafeGraph improperly focuses on the period when Defendants surveilled CCSJ, instead of the date when Plaintiffs became aware of the surveillance. Plaintiffs found out about the surveillance during discovery in or around November 2022. Gondeiro Decl., ¶ 2. The County's surveillance was covert and unknown to the public. Thus, the proper date for this Court to consider is November 2022.

*Mills v. City of Covina,* does not support a different conclusion. 921 F.3d 1161 (9th Cir. 2019). There, plaintiff alleged he was unlawfully arrested and searched and brought a section 1983 claim over three years after the search and arrest occurred. *Id.* at 1166-67. *Mills* is distinguishable because the plaintiff knew or had reason to know of his claims when he was searched or arrested, unlike this case, where Defendants were surreptitiously surveilling Plaintiffs for at least over a year.

Even if this Court considers the date the alleged unlawful searches occurred as the proper date, Plaintiffs are still not time barred. Instead of focusing on the entirety of Plaintiffs' FAC, Defendant cherry-picks a particular period referenced in a report not mentioned in the FAC. Mot. at 15. For one, it is improper for SafeGraph to rely on this report at this stage because it conflicts with Plaintiffs' allegations. *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ("More specifically, we may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed.")

Moreover, Plaintiffs allege numerous violations of their constitutional rights throughout the COVID-19 pandemic, a period spanning from 2020 through 2022. *See* FAC ¶¶ 4, 10, 23, 25, 35. Defendants surveyed CCSJ to understand the effects of the COVID-19 orders. *Id.* ¶ 31. Plaintiffs, at no time, limit the period of wrongdoing to the data sample analyzed in the Ho Report. Thus, Plaintiffs' claims are not time-barred.

**C. Plaintiffs Allege Facts Sufficient To State A Plausible Section 1983 Claim Against SafeGraph**

1. **Plaintiffs allege facts that show Safegraph is a state actor subject to section 1983 liability**

Defendant SafeGraph incorrectly asserts that it is free of constitutional constraints and cannot be subject to any section 1983 claim. Mot. at 15. While private conduct does not generally constitute government action, SafeGraph can be liable under section 1983 if it acted pursuant to a right, privilege, or rule of conduct imposed by the state, and it is a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "The Supreme Court has developed four different tests that aid us in identifying state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (cleaned up). The Ninth Circuit does not apply the two-step framework rigidly and has found the first step unnecessary in certain contexts. *See Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498, 503 n.3 (9th Cir. 1996) (evaluating only the second step of the Lugar framework to determine whether a private party operated as a state actor).

*(a) SafeGraph acted pursuant to the County's policies and directives*

Defendant argues that Plaintiffs "make no reference to any sovereign state authority and allows for no reasonable inference that SCC somehow deputized SafeGraph, vested it with law enforcement powers, or afforded it special privileges." Mot. at 16. However, "there is no specific formula for defining state action." *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983). Determining whether a private entity is acting through the state is "necessarily fact-bound." *Lugar*, 457 U.S. at 939. The analysis of whether "state actor/color-of-state-law" exists begins by identifying the gravamen of the complaint – the specific conduct of which the plaintiff complains. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Here, Plaintiffs' injuries stem from the County's policies and directives. Plaintiffs claim (1) SafeGraph, as ratified by Dr. Cody and James Williams, collected data from CCSJ and other businesses as part of a well-orchestrated geofencing operation (FAC, ¶ 39); (2) SafeGraph, at the direction of the County, put two geofences around CCSJ and surveilled church members during the COVID-19 pandemic (*id.*, ¶ 25); and (3) the County did not simply approve or acquiesce to SafeGraph's surveillance of CCSJ (*id.*, ¶ 30), but rather, SafeGraph acted as an instrument of the County to assist the County in understanding the effects of its COVID-19 orders (*id.*, ¶ 31). The data assisted Dr. Sara Cody in shaping public health strategy and policy. *Id.*, ¶ 31. These allegations demonstrate that SafeGraph acted pursuant to the County's policies and directives.

*(b) Joint Action/Government Nexus Test*

Defendant repeatedly asserts that SafeGraph is not a state actor because it followed its "technical capabilities" and that there is "no plausible suggestion that SafeGraph ceded control over its internal operations…." Mot. at 16-17. These arguments are red herrings and misconstrue the requirements for state action.

The Ninth Circuit has considered the "joint action" and "nexus" tests both individually and in combination. *Kirtley v. Rainey*, 326 F.3d 1088, 1093-94 (9th Cir. 2003) (using the tests separately); *Jensen v. Lane County*, 222 F.3d 570, 575-76 (9th Cir. 2000) (using a combined "close nexus/joint action test"). Private entities can be state actors if they are "willful participant[s] in joint action with the state or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "The [joint action] test asks whether the government has so far insinuated itself into a position of interdependence with a private entity that the

private entity must be recognized as a joint participant in the challenged activity." *Pasadena Republican Club*, 985 F.3d at 1167 (internal quotations and citation omitted). Under the "close nexus" test,[2] the "inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974). The existence of the "close nexus" depends on whether the State has "exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the State." *Sullivan*, 526 U.S. at 52 (quotations omitted).

Here, Plaintiffs have alleged facts establishing that SafeGraph was a willful participant acting jointly with the County to surveil CCSJ and other entities throughout the COVID-19 pandemic. Plaintiffs allege that SafeGraph acted "as an instrument of the County to assist the County in understanding the effects of its COVID-19 orders." FAC, ¶ 31. The County simply did not approve or acquiesce to SafeGraph's surveillance of CCSJ. *Id.*, ¶¶ 25, 30. The surveillance was initiated by the County, and the County requested this information as part of a well-orchestrated geofencing operation. *Id.*, ¶¶ 31, 39. These allegations demonstrate that the County had "so far insinuated itself into a position of interdependence with [SafeGraph] that it must be recognized as a joint participant in the challenged activity." *Tsao v. Desert Palace*, 698 F.3d 1128, 1140 (9th Cir. 2012).

Defendant's reliance on *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) is misplaced. Mot. at 18-19. There, O'Handley sued Twitter (now known as X) and California's Secretary of State alleging various constitutional violations for Twitter's decision to limit his social media posts and then suspend his account. 62 F.4th at 1156. The Ninth Circuit held that Twitter was not a state actor because O'Handley did not allege any facts plausibly suggesting that the government was involved in the company's internal decisions to limit access to his tweets and suspend his account "or that the State played any role in drafting Twitter's Civic Integrity Policy." *Id.* at 1160.

[2] The Ninth Circuit has noted that the Supreme Court may consider the "nexus" not as a separate test but as a status found in all cases where the private conduct is attributable to the State. *Lee v. Katz*, 276 F.3d 550, 554 n. 4 (9th Cir. 2002) (positing that *Brentwood* and *Blum* may stand for the proposition that a "nexus" results from the existence of "entwinement" or a "public function").

In *O'Handley*, Twitter exercised its own discretion when moderating content and its users, whereas, here, SafeGraph specifically created and established two separate geofences around CCSJ at the direction and request of the County. *Id.* at 1156-60; FAC, ¶ 31. Twitter also had a policy in place before the government got involved. Here, SafeGraph did not have a policy that directed it to surveil the visit patterns of entities in the County. SafeGraph acted pursuant to the County's policies and directives. *Id.*, ¶¶ 25, 30-31, 39. SafeGraph surveilled CCSJ because of the County's "heav[y] involve[ment] in the decisionmaking process." *Rawson v. Rec. Innov., Inc*, 975 F.3d 742, 754 (9th Cir. 2020). Thus, Plaintiffs have alleged facts that, if proven, demonstrate SafeGraph is a state actor.

2. **Plaintiffs allege facts that show Safegraph violated their Fourth Amendment rights**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "The 'basic purpose of this Amendment,' our cases have recognized, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (citing *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967)).

"When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' ...official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter*, 138 S. Ct. at 2213 (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). The Supreme Court has affirmed that individuals have a "reasonable expectation of privacy in the whole of [their] physical movements." *Carpenter,* 138 S. Ct. at 2217.

Here, Defendants' acquisition of location data through a geofence intruded upon the Plaintiffs' reasonable expectation of privacy because it disclosed private, sensitive information about the Plaintiffs engaged in private worship and religious practice. FAC, ¶ 90. Plaintiffs do not attend church with the expectation that they will be covertly surveilled by the government. *Id.*, ¶ 92. By obtaining historical location data generated by cell phone holders, the Defendants could obtain "an all-encompassing record of the holder's whereabouts," thus "revealing not only his particular movements" but the most intimate details of his or her life. *Carpenter*, 138 S. Ct. at 2217-18; *see also Riley v. California*, 573 U.S. 372,

403 (2014) ("With all [modern cell phones] contain and all they may reveal, they hold for many Americans 'the privacies of life.'").

SafeGraph erroneously relies on Professor Ho's Report to claim that no private information was disclosed to Defendants. Mot. at 20. Again, SafeGraph cannot rely on judicially noticed facts "that could reasonably be disputed." *United States*, 655 F.3d at 999. Plaintiffs allege that geofences can reveal sensitive, private information about individuals, and that researchers have repeatedly demonstrated that cross-referencing datasets can reveal the identifying information of nearly ever anonymized user. FAC, ¶¶ 46-49. These allegations must be accepted as true at this stage, and all inferences must be construed in Plaintiffs' favor.

In sum, Plaintiffs had a reasonable expectation of privacy in their physical location and movements at church, and the Defendants were required to obtain a warrant prior to putting a geofence around CCSJ's property. Defendants did not do so, in violation of the Fourth Amendment. *Id.*, ¶ 94.

3. **Plaintiffs allege facts that show Safegraph violated their First Amendment rights**

Plaintiffs state a claim for relief under the framework outlined in *Roman Catholic Diocese of Brooklyn, v. Cuomo*, 141 S. Ct. 63 (2020) ("Brooklyn Diocese"), wherein the Supreme Court fundamentally altered Free Exercise jurisprudence. There, the Court enjoined enforcement of Governor Cuomo's Cluster Action Initiative – an order that restricted indoor worship during the COVID-19 pandemic. *Id.* at 64. The Court held the order was not neutral and generally applicable because it treated churches harsher than secular entities and activities like acupuncture facilities, bike shops, and liquor stores. *Id.* at 66-67.

Notably, Justice Kavanaugh, rejected New York's argument that it did not discriminate against religion because some secular businesses like movie theaters were treated equally or more harshly: "[I]t does not suffice for a State to point out that, as compared to houses of worship, *some* secular businesses are subject to similarly severe or even more severe restrictions." *Id.* at 73 (emphasis in original). He continued, "Rather, once a State creates a favored class of business . . . the State must justify why houses of worship are excluded from that favored class." *Id.*

The Ninth Circuit has noted *Brooklyn Diocese's* "seismic shift in Free Exercise law." *Calvary Chapel Dayton Valley v. Sisolak,* 982 F.3d 1288, 1233 (9th Cir. 2021). On January 22, 2021, the Ninth

Circuit granted an injunction against California's COVID-19 restrictions on indoor religious gatherings. *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1151-52 (9th Cir. 2021). The Ninth Circuit also granted a similar injunction in *Harvest Rock Church, Inc. v. Newsom*, 985 F.3d. 711 (9th Cir. 2020).

Defendants' geofencing operation fails both the neutrality and general applicability tests under *Brooklyn Diocese* and *Tandon*. The Supreme Court in *Tandon* affirmed that a regulation is not neutral and generally applicable where it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (emphasis in original) (citing *Brooklyn Diocese*, 141 S. Ct. at 67-68). And "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon,* 593 U.S. at 62 (citing *Brooklyn Diocese*, 141 S. Ct. at 67). Moreover, a law lacks general applicability when "it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

Plaintiffs allege that Defendants' geofencing operation was not neutral and generally applicable because not all businesses and entities were subject to surveillance. FAC, ¶ 113. The Defendants imposed an expansive geofencing operation on CCSJ while overlooking other large gatherings like protests, weddings, and graduation parties. *Id.*, ¶ 116. Plaintiffs have no compelling justification for surveilling CCSJ but no other similar gatherings. At this stage, Defendants cannot demonstrate that their surveillance was narrowly tailored. Indeed, the FAC alleges that Defendants' geofencing operation had no limitations or boundaries. *Id.*, ¶¶ 6, 39. Thus, Plaintiffs easily satisfy Rule 8's liberal pleading standard in stating a claim for relief under the First Amendment.

## V. CONCLUSION

For the foregoing reasons, this Court should deny Defendant SafeGraph's motion to dismiss. In the alternative, this Court should grant Plaintiffs leave to amend.

Respectfully submitted,

Dated: January 22, 2024

/s/ Mariah Gondeiro, Esq.
Mariah Gondeiro
Attorney for Plaintiffs